UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| CLARENS JUNIOR GELIN, | ) | Case No.  6:09-bk-15881-KSJ |
| MARIE DENISE DESTIN, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| | ) | |

# MEMORANDUM OPINION DENYING
## MOTIONS FOR CRAMDOWN AND DENYING CONFIRMATION

The debtors are investors who purchased six rental properties during the recent real estate boom.  Each property is encumbered by at least two mortgages.  With the recent financial recession, the properties now are worth far less than the debt.  The debtors filed this Chapter 11 case to reduce or, in some cases, eliminate their mortgage debt and to retain five of these six properties.  One creditor, Branch Banking and Trust Company ("BBT"), objects to the confirmation of the debtors' plan of reorganization, arguing that the absolute priority rule, even as modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), does not allow the debtors to keep assets, unless their unsecured creditors either consent or are paid in full.  Here, the unsecured creditors will receive less than one percent of their claims.  The debtors made no attempt to get their consent.  The Court agrees that the statutory amendments enacted by BAPCPA do not except individuals from the absolute priority rule in Chapter 11 cases and will deny both the debtors' Motion Pursuant to 11 U.S.C. § 1129(b) − (Classes 12 and 13 − Wholly Unsecured Second Mortgage and Unsecured Creditors ) and confirmation of the debtors' Second Plan of Reorganization.[1]

The debtors are not typical real estate investors.  Mrs. Destin works as a registered nurse.  Mr. Gelin works as the assistant manager of a pharmacy.  Mr. Gelin also acts as a part-time realtor, and the debtors jointly purchased six rental properties between 2005 and 2007, relying on

---

[1] Doc. Nos. 102 and  98.

the then-available mortgage financing.  Each property has two mortgages, the majority of which are adjustable rate mortgages.  As a result of vacancies at the units and rising interest rates, the debtors almost immediately defaulted on their mortgages.  As discussed in the debtors' Disclosure Statement,[2] on October 20, 2009, the debtors filed this Chapter 11 case:

> [T]o deal with these several mortgages and unsecured debt related to the repair and maintenance of the debtors' real properties.  Due to the decrease in the value of the real properties and lack of rental income, the mortgage debts became higher than the value and income producing potential of the real properties.  The [d]ebtors have lowered mortgage payments and are attempting to rent and/or sell real property over the life of the Plan.

Consistent with this goal, the debtors filed various motions to value the mortgages.[3] Generally, the debtors stripped off or avoided the secured liens held by holders of junior mortgages.[4]  In the case of BBT, the bank held a junior mortgage on real property located in Melbourne, Florida.  Their claim was valued at $0 secured and $95,435.03 unsecured.[5]

By converting all secured junior mortgages encumbering their property into unsecured claims, the debtors substantially reduced their secured claims but significantly increased the amount of their unsecured debt.  The debtors' Second Amended Plan of Reorganization[6] provided for eleven classes of priority or secured debts to pay tax claims, holders of first mortgages, and car lenders.  None of these creditors objected to their treatment under the plan.

The debtors, for some reason, divided their unsecured claims into two classes: Class 12 consists of "wholly unsecured second mortgage claims," and specifically includes BBT's

---

[2] Doc. No. 27.
[3] Doc. Nos. 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, and 49.
[4] Doc. No. 94.  Under § 506(a) of the Bankruptcy Code, an allowed claim is a secured claim only to the extent of the value "of such creditor's interest in the debtor's property."  In a Chapter 11 case, when the senior lien exceeds the amount of the value of the property, junior lien holders, such as BBT, have only an unsecured claim. Thus, any junior liens are "stripped off" because they are not allowed secured claims.  Such wholly unsecured junior lien holders instead are granted an unsecured claim for the amount of the junior lien.
[5] Doc. No. 94, ¶ 3.
[6] Doc. No. 98.

unsecured claim; Class 13 consists of "general unsecured claims, including wholly unsecured second mortgage claims."[7]  The debtors' collective unsecured claims exceed $600,000.

 The debtors propose to pay their unsecured creditors all of their net disposable income for five years in quarterly installments on a pro rata basis.[8]  At the time of confirmation, the debtors estimated they would make monthly payments of $251[9] for 60 months for a total payment to unsecured creditors of $15,060, or a return of less than one percent to unsecured creditors.  These payments could increase if the debtors' income correspondingly increased for any reason, including the sale or refinancing of their real properties at a "profit" or the receipt of tax refunds.  Under any scenario, however, unsecured creditors are getting little to no return on their claims under the debtors' plan.

At the confirmation hearing, the debtors arguably met all requirements to confirm their plan of reorganization under § 1129(a) of the Bankruptcy Code,[10] with the exception that the debtors did not solicit acceptances from their creditors, as required by § 1129(a)(8).[11]  Rather, the debtors relied on various motions to cram down non-accepting creditor classes.[12]  Courts routinely force, or cram down, treatments under plans as to secured or priority creditors who are receiving payment in full for their claim over time with interest.  In this case, no secured or priority creditor objects to the confirmation of the debtors' plan.

---

[7] Doc. No. 98, pgs. 7-8.

[8] Doc. No. 98, p. 8.

[9] The Court has significant doubt as to whether the debtors' cash flow projections, attached as Exhibit A to their plan, are realistic or feasible.  Under § 1129(a)(11), the Court must find that the plan "is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  In other words, the Court must find that the debtors' ability to carry out their plan of reorganization is feasible.  However, in close cases, such as this, generally the Court will allow debtors an opportunity to demonstrate feasibility by performance.  In this case, the Court will not deny confirmation of the debtors' plan on feasibility grounds alone.

[10] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

[11] Debtors also failed to establish that any impaired, non-insider creditor class voted to accept their plan, as also required by §1129(a)(8).

[12] Doc. Nos. 99, 100, 101, 102, and 103.

The difficulty arises in trying to cram down plan treatment on unsecured creditors, as the debtors now seek to do.[13]   Under § 1129(b)(1), a debtor must show that the plan is "fair and equitable" with respect to each impaired class of claims.  A debtor can meet this test if the plan complies with the absolute priority rule of § 1129(b)(2)(B)(ii),[14] which, prior to the passage of BAPCPA in 2005, clearly applied to individual Chapter 11 debtors.[15]  As the Supreme Court has noted, the absolute priority rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a plan of reorganization]."[16]  This means a debtor who retains property of the estate under a plan "would be in violation of the absolute priority rule if the dissenting class of unsecured creditors are not paid in full because he would be the holder of a 'junior interest' retaining property at the expense of unsecured creditors."[17]

The absolute priority rule thus requires debtors, if they wish to retain any property of the estate, to either obtain the acceptance of the impaired unsecured class or to pay the claims in full. Debtors here seek to keep five parcels of real property.  They proposed making *de minimus* payments to their unsecured creditors of less than one percent of their claims over five years. But they made no attempt to get the support or consent of their unsecured creditors, perhaps realizing the futility of this endeavor.

Nonetheless, the debtors hope to confirm their current plan by arguing that the absolute priority rule no longer applies to individual debtors in Chapter 11 cases because of language added by BAPCPA to § 1129(b)(2)(B)(ii).   As such, they argue their plan is subject to

---

[13] Doc. Nos. 102 and 104.

[14] Pre-BAPCPA, § 1129(b)(2)(B)(ii) read that a plan meets the fair and equitable condition, with respect to a class of unsecured claims, if: "(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."

[15] *See, e.g.*, *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (holding the absolute priority rule applied to family farmers in Chapter 11); *Unruh v. Rushville State Bank*, 987 F.2d 1506, 1508 (10th Cir. 1993); *In re Gosman*, 282 B.R. 45, 48 (Bankr. S.D. Fla. 2002).

[16] *Id.* at 202 (quoting *Norwest Bank Worthington v. Ahlers*, 794. F.2d 388, 401 (8th Cir. 1986).

[17] *Gosman*, 282 B.R. at 49.

confirmation, even though the debtors will retain the majority of their assets and not a single unsecured creditor has accepted (or even voted) on the plan or will receive even one percent on their claims.

BBT objects to the debtors' characterization of the change to the absolute priority rule.[18] It argues that BAPCPA did **not** entirely except individual debtors from the absolute priority rule of § 1129(b)(2)(B)(ii), but that it only allows a limited exception to the rule by permitting individual debtors to retain under a plan property acquired post-petition.

Section 1129(b)(2)(B)(ii) of the Bankruptcy Code now provides that a plan meets the fair and equitable requirement with respect to each class if, with respect to a class of unsecured claims:

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.* (emphasis added)

The new language (emphasized above) allows an individual Chapter 11 debtor to confirm a plan that pays its unsecured creditors nothing, over their objections, even when the debtor retains "property included in the estate under § 1115" of the Bankruptcy Code.  Therefore, in order to determine the current viability of the absolute priority rule as to an individual Chapter 11 debtor, the key question is: What does the phrase "property included in the estate under § 1115" mean?

Section 1115 is subject to two interpretations—a *broad* interpretation that under § 1129(b)(2)(B)(ii) would allow debtors to keep basically everything, and a *narrow* interpretation that would allow a debtor to keep only property and wages acquired post-petition—and provides:

> (a)  In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541—
> (1) All property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first;

---

[18] Doc. No. 121.

Under the broad view, § 1115 defines *all* property of the estate for individual Chapter 11 debtors, which consists of property included in the estate under § 541 *and* property acquired post-petition "of the kind specified in § 541." This reading abrogates the absolute priority rule for individual Chapter 11 debtors because an individual debtor could discharge all unsecured debts by paying net disposable income for five years, as required by § 1129(a)(15)(B), and still keep *all* assets of the estate under §§ 1129(b)(2)(B)(ii) and 1115. In essence, this view interprets "property included in the estate under § 1115" to mean "*all* property of the estate."

Read narrowly, however, § 1115 merely *adds to* an individual debtor's Chapter 11 estate—already defined by § 541—property acquired post-petition. This reading mostly preserves the absolute priority rule for individual Chapter 11 debtors, since, under § 1129(b)(2)(B)(ii), a debtor could only keep assets acquired post-petition and cram down non-payment on unsecured creditors. It accordingly interprets "property included in the estate under § 1115" to mean "*only* the property added to the estate under § 1115 and *not* property of the estate under § 541."

Initially, both commentators and bankruptcy courts argued for a broad reading of the statute.[19] These three courts all first found the language of §§ 1115 and 1129(b)(2)(B)(ii) ambiguous. They then proceeded to try to find a reading of the two statutes that gave both meaning. Trying mightily to make sense of a confusing statutory juxtaposition, these courts opined that, because BAPCPA made many changes that imposed many Chapter 13-like requirements on individual Chapter 11 debtors, and, because Chapter 13 does not include an absolute priority rule, Congress necessarily must have intended a broad reading of § 1115 to abrogate the absolute priority rule in Chapter 11 cases filed by individual debtors.

---

[19] *In re Shat*, 424 B.R. 854 (Bankr. D. Nev. 2010); *In re Tegeder*, 369 B.R. 477 (Bankr. D. Neb. 2007); *In re Rodemeier*, 374 B.R. 264, 275-76 (Bankr. D. Kan. 2007); *see also In re Johnson*, 402 B.R. 851, 853 (Bankr. N.D. Ind. 2009) (stating in dicta that an "individual's plan does not need to satisfy the absolute priority rule….")

In the most recent "broad view" decision, the Bankruptcy Court in *In re Shat*[20] reluctantly adopted the broader reading of §§ 1115 and 1129(b)(2)(B)(ii), finding that "most of the changes effected by BAPCPA to individual chapter 11 debtors were part of an overall design of adapting various chapter 13 provisions." However, the same court noted that this reading "essentially reads the absolute priority rule out of individual chapter 11 cases, but does so in a convoluted manner—arguably indicative that Congress did not fully appreciate the effect of the language it chose."[21]

Only very recently has a bankruptcy court interpreted § 1115 narrowly to preserve the absolute priority rule.[22] The Bankruptcy Court for the Central District of California in *In re Gbadebo* rests its holding on two main points. First, the court found the most sensible reading is that § 1115 adds property to a Chapter 11 estate not already included under § 541 by virtue of § 103(a).[23] It does not, in the court's view, substitute § 1115 for § 541 in individual debtor Chapter 11 cases, as *Shat* held.[24] Second, *Gbadebo* disagreed with the *Shat* and *Roedemeir* decisions' characterization of BAPCPA's overarching purpose to make individual Chapter 11 cases more like Chapter 13 cases. To the contrary, the court stated "[n]o one who reads BAPCPA as a whole can reasonably conclude that it was designed to enhance the individual debtor's 'fresh start.'"[25]

This Court agrees with *Gbadebo* that the narrow reading of § 1115 is the best, most likely interpretation of Congress' intent. Because the phrases "in addition to" in § 1115 and "included in" in § 1129(b)(2)(B)(ii) are ambiguous, the Court must attempt to interpret Congress' intent in

---

[20] 424 B.R. at 868.
[21] 424 B.R. at 867.
[22] *In re Gbadebo*, 431 B.R. 222 (Bankr. N.D. Cal. 2010).
[23] Section 103(a) provides "…chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title…." *Gbadebo*, 431 B.R. at 229.
[24] *Id.*
[25] *Id.*

drafting both sections.[26]  The legislative history on § 1129(b)(2)(B)(ii) is unhelpful to this end.

As each of the bankruptcy courts above noted, the legislative history is entirely silent as to

whether the drafters of amendment to § 1129(b)(2)(B)(ii) intended to wholly except

individual Chapter 11 debtors from the absolute priority rule.[27]  Moreover, *Shat* and *Gbadebo*

both drew persuasive, yet opposing inferences from BAPCPA's overall changes to support their

contrasting views on Congress' intent with regard to the absolute priority rule.  In other words,

the legislative history on this statutory ambiguity *is itself ambiguous*.

Because the legislative history of BAPCPA is unhelpful, the Court must attempt to

interpret Congress' intent in drafting §§ 1129(b)(2)(B)(ii) and 1115 as best it can by giving the

statutes their most sensible meaning in the context of the Bankruptcy Code.  Although the broad

reading of § 1115 is certainly a plausible interpretation given the text's unquestionable

ambiguity, the arguments in favor of the narrow view are more persuasive.  First, as noted in

*Gbadebo*,[28] it is far more likely that the phrase "in addition to" in § 1115 indicates that the

purpose of the section is only to *add* property to an individual debtor's bankruptcy estate that

was previously left out.  Before BAPCPA, § 103(a) made clear that § 541—which defines

property of the estate—applied to Chapter 11 cases, including an individual Chapter 11 case.

Because BAPCPA changed neither of these sections, there is no reason for § 1115 to "absorb"

and "supersede" § 541 to define property of the estate for individual Chapter 11 cases, as

suggested by *Shat*.  To add property to the estate, however, Congress need only add a provision

stating that post-petition acquired property is *also* included in the estate when the debtor is an

---

[26] As the Eleventh Circuit Court of Appeals has held "The starting point for all statutory interpretation is the language of the statute itself…We will only look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous…"  *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (1999).  "If the statutory language is ambiguous…courts may examine extrinsic materials, including legislative history, to determine Congressional intent."  *Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1239 (11th Cir. 2000).

[27] *See, e.g. Shat*, 424 B.R. at 862-64; *Gbadebo*, 431 B.R. at 229.

[28] 431 B.R. at 229.

individual.  In light of pre-BAPCPA operation of § 541, this is most likely what the drafters meant by the phrase "in addition to property specified in section 541" in § 1115.

Moreover, with all due respect, this Court can hardly imagine a more convoluted way of eliminating the absolute priority rule than that proposed by *Shat*, *Roedemeir*, and *Tegeder*.  If Congress meant to eliminate the absolute priority rule of § 1129(b)(2)(B)(ii) for individual debtors, it could have simply stated that § 1129(b)(2)(B)(ii) is inapplicable in a case in which the debtor is an individual.  Reading §§ 1129(b)(2)(B)(ii) and 1115 to exempt individual debtors from the absolute priority rule is an incredibly complicated and forced interpretation of these sections, especially given the dearth of on-point legislative history.  It requires the reader to interpret "property included in the estate under section 1115" to mean simply "property of the estate," which is difficult to swallow given that property of the estate has long been defined under § 541.  If Congress truly meant to exempt an individual debtor's entire estate, it likely would have referred to *both* §§ 541 and 1115.  The more likely interpretation, then, is that the phrase "included in the estate under section 1115" refers only to the post-petition property *added to* the estate under § 1115, which estate is otherwise defined under § 541.

Additionally, contrary to the decisions in *Shat* and *Roedemeir*, the narrow reading does not render § 1115 insignificant or meaningless.  As one bankruptcy treatise has noted, § 1115 brings post-petition acquired property into the estate, thereby extending "the automatic stay in Chapter 11 cases to an individual debtor's postpetition earnings and subjects those earnings to the various tests for confirmation of a Chapter 11 plan."[29]  Nor does the narrow reading render the added language in § 1129(b)(2)(B)(ii) meaningless, as debtors are able to keep post-petition earnings despite the absolute priority rule.  Although the *Shat* and *Roedemeir* decisions are correct that the narrow reading of § 1115 implies that the added provisions of § 1129(b)(2)(B)(ii)

---

[29] Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy, 4d. Ed.*, § 368.1, at ¶ 3, Sec. Rev. July 3, 2007, www.Ch13online.com.

are of little help to individual debtors' efforts to confirm a plan of reorganization, the exemption from the absolute priority rule of post-petition earnings and acquired property may nonetheless prove to be of some help to some debtors.

In conclusion, the Court will deny the debtors' motion seeking to cram down their unsecured creditors.[30]   The changes to § 1129(b)(2)(B)(ii) under BAPCPA did not entirely exempt individual Chapter 11 debtors' plans from the absolute priority rule.  Individual debtors in Chapter 11 cases can retain their post-petition assets and earnings.  But they cannot cram down a plan that contemplates retention of pre-petition assets unless they get acceptances from unsecured creditors or pay them in full.  The absolute priority rule of § 1129(b)(2)(B)(ii) still mandates this result.  Because the debtors neither obtained the consent of their unsecured creditors nor plan to pay their claims in full, the Court will deny their cramdown motion and confirmation of the debtors' plan of reorganization.[31]   And because this plan is not subject to confirmation, the Court also will deny the debtors' other related motions seeking to cram down their plan on other non-objecting creditor classes.[32]

A separate order consistent with this Memorandum Opinion shall be entered.  A status conference is set for **11 a.m. on October 13, 2010**, at which time the debtors can state whether they wish to proceed with their reorganization efforts.

DONE AND ORDERED in Orlando, Florida, on September 29, 2010.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

---

[30] Doc. No. 102.
[31] Doc. Nos. 98 and 102.
[32] Doc. Nos. 99, 100, 101, and 103.

Copies provided to:

Debtors:  Clarens Junior Gelin and Marie Denise Destin, 4398 Chastan Drive, Melbourne, FL 32940

Debtors' counsel:  Taylor J. King, 5452 Arlington Expressway, Jacksonville, FL  32211

United States Trustee:  Miriam G. Suarez, 135 W. Central Blvd., Suite 620, Orlando, FL  32801

All Creditors and Interested Parties